Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001352
31-OCT-2017
08:55 AM

NO. CAAP-14-0001352

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DANIEL IBBETSON, Plaintiff/Counter-Defendant/Appellee,
v. DEAN KAIAWE, Defendant/Counterclaimant/Third-Party
Plaintiff/Appellant, v. HAWAII CONFERENCE FOUNDATION,
a Hawaii nonprofit corporation, and
DEPARTMENT OF PUBLIC WORKS, COUNTY OF HAWAII,
a municipal corporation, Third-Party Defendants/Appellees


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 06-1-015K)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, and Reifurth, J.;
and Ginoza, J., concurring and dissenting)

Defendant-Appellant/Counterclaimant/Third-Party

Plaintiff Dean Kaiawe (**Kaiawe**) appeals from the Amended Final

Judgment (**Amended Judgment**) entered on November 13, 2014, by the

Circuit Court of the Third Circuit (**Circuit Court**).[1]  The Amended

Judgment entered judgment in favor of Plaintiff-Appellee/

Counterclaim Defendant Daniel Ibbetson (**Ibbetson**) as to the

Complaint and Counterclaim, and in favor of Third-Party

Defendants Hawaii Conference Foundation (**HCF**) and Department of

_____

[1]     The Honorable Elizabeth A. Strance presided.

Public Works, County of Hawai'i (**DPW**), as to the Third-Party Complaint.  The Amended Judgment was entered pursuant to, *inter alia*, an April 14, 2010 Order Granting Plaintiff/Counterclaim Defendant Daniel Ibbetson's Motion for Summary Judgment as to All Counts of the Counterclaim filed February 10, 2006, filed November 25, 2009 (**Summary Judgment Order**), which is also challenged on appeal.

I.    BACKGROUND

This case involves a 0.722-acre parcel of land located in south Kona on the island of Hawai'i (the **Property**).  In 1915, Mikala Kaiawe conveyed "all of that certain piece or parcel of ground situate[d[ in said Kaohe 5, lying on the makai side of the government road adjoining Kaohe 4" to the Board of the Hawaiian Evangelical Association (**Association**) (**1915 Deed**).  The 1915 Deed describes the Property as follows:

> Commencing at the Northeast corner of this piece on the old government trail, a little makai of the present government road, adjoining Kaohe 4, and running thence along the line between Kaohe 4 and Kaohe 5, 200 feet in a westwardly direction to a stake and stone pile; thence southwardly to a stake and stone pile 120 feet; thence eastwardly to a stake and stone pile 275 feet; and thence northwardly . . . to point of commencement, and containing about three-fourths of an acre, more or less, and being described in R.P. Number 2368 to Huakonou.
>
> To have and to hold the said premises, with the appurtenances, so that it may be used as a cemetery, to the said Board of the Hawaiian Evangelical Association, its successors and assigns, forever.

In 1952, the Association petitioned to change its name to the Hawaiian Evangelical Association of Congregational-Christian Churches.  In 1963, the Hawaiian Evangelical Association of Congregational-Christian Churches changed its name to Hawaii Conference of the United Church of Christ (**UCC**).

On September 2, 1983, the UCC, as Grantor, executed a quitclaim deed in favor of a related administrative entity, HCF,[2] as Grantee, which avers that the Grantor

> does hereby remise, release and quitclaim unto the Grantee, its successors and assigns, [the Property] AND the reversions, remainders, rents, issues and profits thereof, and **all of the estate, right, title and interest of the Grantor**, both at law and in equity, therein and thereto.

(**1983 Deed**) (emphasis added; format altered).

The Property was described in an attached exhibit as "the premises conveyed to the [UCC], a Hawaii nonprofit corporation, formerly known as the [Association], by deed dated February 2, 1915, recorded in the Bureau of Conveyances of the State of Hawaii in Liber 425, Page 34." The 1983 Deed also states:

> TO HAVE AND TO HOLD the same, together with the improvements thereon and all rights, easements, privileges and appurtenances thereunto belonging or appertaining, unto the Grantee, its successors and assigns, for cemetery purposes only, forever.

The 1983 Deed was filed with the State of Hawai'i Bureau of Conveyances on October 11, 1983.

In February 2003, HCF and Ibbetson executed a Deposit, Receipt, Offer and Acceptance (**DROA**). On March 17, 2003, HCF, as Grantor, executed a limited warranty deed, conveying the Property to Ibbetston, as Grantee (**2003 Deed**). The Property was described in an attached exhibit as the premises acquired by the 1983 Deed between UCC and HCF. The 2003 Deed reads:

> That for Ten Dollars ($10.00) and other good and valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, the Grantor does hereby grant,

---

[2] In an HCF annual report submitted by Kaiawe, HCF describes itself as "the investment and property management arm of the Hawaii Conference of the United Church of Christ, continuing the first Christian work started in Hawaii in 1820."

bargain, sell and convey unto the Grantee, as Tenant in Severalty, all of the property more particularly described in **Exhibit A** attached hereto and made a part hereof;

And the reversions, remainders, rents, issues and profits thereof and all of the estate, right, title and interest of the Grantor, both at law and in equity, therein and thereto;

EXCEPTING AND RESERVING, HOWEVER, unto Grantor and its successors and assigns, a perpetual non-exclusive easement for the visitation, maintenance and care of existing grave sites ("Grave Site A"), located upon the real property identified in **Exhibit** 1 attached hereto, and an easement for ingress and egress to Grave Site A from Mamalahoa Highway to and from the grave sites. Grantor also hereby reserves for itself and its successors and assigns, a limited right of entry for the purpose of visiting presently unidentified grave sites ("Grave Site B") located upon the real property identified in said Exhibit 1. The foregoing easement and right of entry shall run with the land and be in favor of Grantor and for the benefit of the relatives of the persons buried in the graves located within Grave Site A and Grave Site B, subject to the following terms and conditions:

(a) No additional burials or internments of remains will be allowed in either Grave Site A or Grave Site B, with the exception that:

(1) Louisa Louika Kema Haʻalilio, wife of William Makaenaena Haʻalilio, may be buried at Grave Site A; and

(2) cremated remains may be interred at Grave Site A, provided that such remains shall be interred in standard sized vaults with comparably sized vault markers.

(b) Entries and visits to Grave Site A shall be limited to daylight hours.

(c) As the identities of the persons buried at Grave Site B are currently unknown, and access to Grave Site B would involve entry onto the property, any person desiring to visit Grave Site B shall notify Grantee in advance to coordinate the date and time of the visit with Grantee, to agree to the location of access to Grave Site B, and to provide verification of the visitor's relationship to the deceased.

(d) Grantee shall bear no responsibility for maintenance or care of either Grave Site A or Grave Site B, provided that Grantee shall maintain the current access to Grave Site A and Grave Site B in their existing condition, but shall have no obligation to improve the access.

(e) Grantee shall not be responsible or liable for claims for personal injury and property damage arising out of the use of the foregoing easement or right of entry or any breach of these conditions.

The 2003 Deed was filed with the State of Hawaiʻi Bureau of Conveyances on March 21, 2003.

On July 15, 2005, Ibbetson filed an application for a special permit with the County of Hawai'i Planning Commission (**Planning Commission**) seeking permission to allow a bed and breakfast establishment on the Property. At a September 30, 2005 meeting, the Planning Commission allowed Kaiawe to intervene in a contested case hearing. On December 27, 2007, the Planning Commission granted Ibbetson's special permit application subject to certain conditions.

In the meantime, on January 22, 2006, Kaiawe called Ibbetson to inform him that he would visit a grave site on the Property. Kaiawe and three other persons visited Grave Site A and Grave Site B. A confrontation occurred between Kaiawe and Ibbetson when Kaiawe allegedly destroyed bushes and landscaping on the Property. Kaiawe denied Ibbetson's allegations.

On January 26, 2006, Ibbetson filed a Complaint for Injunctive Relief and Damages (**Complaint**). Ibbetson sought an injunction to enjoin Kaiawe and "all those claiming by through or under him, or those previously accompanying him to the subject property from coming to the subject property, except in accordance with the terms of the [2003 Deed]." Ibbetson also requested a temporary restraining order, and damages "for trespass and property damage."

On February 10, 2006, Kaiawe filed his answer to Ibbetson's Complaint. Kaiawe asserted that: (1) Ibbetson lacked standing to assert his claims; (2) Ibbetson is not the owner of the Property; (3) Ibbetson's grantor had no authority to sell the Property; (4) the Property is subject to limitation and

restriction that it be used for cemetery purposes; (5) Kaiawe is entitled under common law, statute, or contract to enter upon the Property for the purpose of visiting grave sites and to maintain the grave sites; (6) the limitation and restriction on the Property gives Kaiawe the unrestricted right to enter the Property without Ibbetson's consent or approval; (7) Ibbetson cannot exclude or prohibit Kaiawe from entering the Property since Kaiawe is a lineal descendant of persons who are buried on the Property; and (8) Rule 19 of the Hawai'i Rules of Civil Procedure (**HRCP**) requires joinder of other parties.

On the same day, Kaiawe filed a Counterclaim to Complaint for Injunctive Relief and Damages (**Counterclaim**). Kaiawe asserted that he was the lineal descendant of Mikala Kaiawe, "who conveyed the subject property to [Ibbetson's] predecessor on condition that the subject property be used for cemetery purposes[.]" Kaiawe argued that a real and actual controversy existed as to the ownership and use of the Property and that he sought "a declaration of the parties' respective rights and obligations under Chapter 632, Hawaii Revised Statutes (**HRS**) as to ownership and use of the Property. Additionally, Kaiawe requested that the Circuit Court determine the respective rights and interest in the Property under HRS Chapter 669.

On April 17, 2006, Ibbetson filed an answer to Kaiawe's Counterclaim. Ibbetson contended that Kaiawe failed to state a claim, failed to join indispensable parties, and failed to present a justiciable controversy. Ibbetson asserted that Kaiawe lacked standing, privity of contract, and that Kaiawe had no

6

right to trespass on private property and destroy private property. Ibbetson also asserted that Kaiawe had no interest or title in the Property.

On October 27, 2006, Kaiawe filed a third-party complaint against HCF (**Third-Party Complaint**). Kaiawe asserted that HCF did not have authority and power to deliver a deed or to convey the Property to Ibbetson, and that HCF continued to own the Property for use as a cemetery. Kaiawe asserted that he has "the unconditional right to visit and to enter on the [Property] in its entirety and to conduct reasonable acts of maintenance thereon." On December 28, 2006, HCF filed its answer to the Third-Party Complaint.

On February 23, 2007, the parties agreed to mediation. On February 26, 2007, the Circuit Court appointed the Honorable Riki May Amano, retired, as the mediator. Ibbetson filed a Motion to Terminate Mediation on December 31, 2008. The Circuit Court entered a Stipulation for Order Granting Ibbetson's Motion to Terminate Mediation on April 6, 2009.

On August 18, 2009, Kaiawe filed a first amended third-party complaint (**Amended Third-Party Complaint**). Kaiawe added DPW as a third-party defendant. Kaiawe contended that DPW had no authority to issue Ibbetson's building permit because it failed to refer the application to the State Historic Preservation Division of the Department of Land and Natural Resources. Additionally, Kaiawe continued to assert that HCF did not have authority and power to deliver a deed or to convey the Property to Ibbetson, and that HCF continued to own the Property for use

as a cemetery. Kaiawe also asserted that he has "the unconditional right to visit and to enter on the [Property] in its entirety and to conduct reasonable acts of maintenance thereon." DPW filed an answer to the Amended Third-Party Complaint on October 8, 2009. HCF filed an answer to the Amended Third-Party Complaint on January 7, 2010.

On November 25, 2009, Ibbetson filed a motion for summary judgment as to all counts of the Counterclaim (**Motion for Summary Judgment**). Ibbetson challenged Kaiawe's standing to bring the Counterclaim. Ibbetson contended that "there is no evidence that any alleged actual or threatened injury to Defendant Kaiawe is fairly traceable to the actions of Plaintiff Ibbetson." Additionally, Ibbetson contended that a claim for "violation of the more restrictive language of the [1983] Deed would be properly brought by heirs, successors and assigns of the Hawaiian Evangelical Association." In response to Kaiawe's contention that the Property should revert to the heirs of Mikala Kaiawe because it was not being used as a cemetery, Ibbetson argued that the language of the 1915 and 1983 Deeds "clearly express the intent of the respective grantors to convey a fee simple estate to the respective grantees[.]" The 1915 Deed, 1983 Deed, 2003 Deed, and Ibbetson's declaration were attached to the Motion for Summary Judgment.

On January 7, 2010, Kaiawe filed objections to Ibbetson's Motion for Summary Judgment. Kaiawe asserted that the language, "so it may be used as a cemetery" in the 1915 Deed created a limitation on title, and that the 1983 Deed "merely

8

confirm[ed]" the limitation on title.  As such, Kaiawe contended that HCF had no authority to convey the Property to Ibbetson. Additionally, Kaiawe contended that the Property was dedicated to cemetery use by common law and statute.  Kaiawe asserted that as a relative of Mikala Kaiawe he has a "common law right to protect a 'dedicated' parcel and to ensure that the parcel so 'dedicated' is used only for cemetery uses and no other uses[.]"  The 1915 Deed, 1983 Deed, 2003 Deed, and DROA were attached to Kaiawe's objections.

On January 11, 2010, Ibbetson filed a reply memorandum in support of his Motion for Summary Judgment.  Ibbetson claimed that the Property was not dedicated by common law or statute. Additionally, Ibbetson argued that there "is no clear intention in the language used by Mikala Kaiawe that would cause the [Property] to revert back to Mikala Kaiawe if the Hawaiian Evangelical Association were to have used the [roperty] for some use other than a cemetery."

The Circuit Court held a hearing on the Motion for Summary Judgment on January 15, 2010.  The parties reiterated the arguments from their respective filings.  The Circuit Court found that there was no genuine issue of material fact and that Ibbetson was entitled to judgment as a matter of law.  The Circuit Court concluded that "the [1915 Deed] did not create a fee simple determinable [and] that [Kaiawe] does not have standing to enforce the [1983 Deed], and that the cemetery was not a dedicated cemetery and, therefore, is not subject to the restrictions set forth in Chapter 441 Hawaii Revised Statutes."

The Circuit Court entered the Summary Judgment Order on April 14, 2010. In this written order, the Circuit Court stated its conclusion as follows:

(1) Defendant Kaiawe has no standing to enforce the [1983 Deed] from the [UCC] to the [HCF]; (2) that neither the [1915 Deed] from Mikala Kaiawe to the [Association] or the [1983 Deed] from the [UCC] to the [HCF] contain language limiting the conveyance in such a manner that the deeds could be construed as conveying anything other than a fee simple interest in the subject property to the Grantee(s); and (3) the property conveyed to Plaintiff Ibbetson by that [2003 Deed], was never dedicated as a public cemetery.

On September 19, 2012, the Circuit Court approved and entered a Stipulation for Entry of Final Judgment, which was agreed to by all parties. The parties stipulated that: (1) judgment would be entered in favor of Ibbetson as to the Complaint and the Counterclaim; (2) judgment would be entered in favor of HCF as to the Third-Party Complaint; and (3) the Amended Third-Party Complaint against DPW was dismissed. The parties also stipulated that the Summary Judgment Order operates as the "law of the case," and determines (1) the legal effect to be given to the 2003 Deed, (2) the legal ownership of the Property, (3) the legal authority of HCF to deliver the 2003 Deed, and (4) the permitted uses of the Property.

On November 5, 2012, the Circuit Court entered its Final Judgment in favor of Ibbetson as to the Complaint and the Counterclaim. The Final Judgment provides, *inter alia*, that

Plaintiff Daniel Ibbetson is the owner of the 0.722-acre parcel described in the [2003 Deed], subject to (1) the restrictions, easements, limitations and conditions described in said [2003 Deed], (2) to the extent applicable, the conditions described in Special Permit 05-015 issued by the County of Hawaii Planning Commission on December 27, 2007 for [Ibbetson's] use of the subject parcel for a 'bed-and-breakfast' facility, (3) the amendment of the easement area for Easement '1' thereon as set forth in that Stipulation for Entry of Final Judgment entered concurrently herewith, and (4) the right of Defendant Dean Kaiawe to

visit Grave Site B as set [forth] in that Stipulation for
Entry of Final Judgment entered concurrently herewith.

The Final Judgment also entered judgment in favor of
HCF as to the Third-Party Complaint, and dismissed the First
Amended Third-Party Complaint against DPW.

On December 5, 2012, Kaiawe filed a notice of appeal
from the Final Judgment in CAAP-12-0001062. On May 8, 2013, the
Intermediate Court of Appeals (ICA) entered an Order Dismissing
Appeal for Lack of Appellate Jurisdiction, as the Final Judgment
failed to resolve the trespass claim in the Complaint, lacked the
language necessary for certification under HRCP Rule 54(b), did
not specifically identify the "claim it purports to resolve by
declaring Appellee Ibbetson the owner of the Property, subject to
various restrictions, easements, limitations, and conditions[,]"
and entered judgment in favor of Ibbetson while awarding Kaiawe
in part the declaratory relief he sought in the Counterclaim.

The Circuit Court entered an Amended Final Judgment on
November 13, 2014. The Amended Judgment entered judgment in
favor of Ibbetson as to all counts in the Complaint and
Counterclaim. With regard to Count 3 of the Complaint, the
parties agreed that "Kaiawe will not enter the area described as
Grave Site B except in compliance with the restrictions,
easements, limitations and conditions described in the [2003
Deed] . . . nor will he deface or destroy any real or personal
property on the site at the time of the entry or visitation."
The Amended Judgment also entered judgment in favor of HCF as to

11

all counts in the Third-Party Complaint, and dismissed the Amended Third-Party Complaint against DPW.[3]

On December 9, 2014, Kaiawe filed a notice of appeal.

II. POINTS OF ERROR ON APPEAL

Kaiawe argues that the Circuit Court erred when it: (1) granted Ibbetson's Motion for Summary Judgment; (2) entered the Amended Judgment in favor of Ibbetson as to the Counterclaim; (3) entered its Amended Judgment in favor of Ibbetson as to the Complaint; and (4) entered its Amended Judgment in favor of HCF as to the Third-Party Complaint. The gravamen of Kaiawe's appeal is that the Circuit Court erred when it concluded that: (1) Kaiawe lacked standing to enforce the 1983 Deed; and (2) the Property was not dedicated as a public cemetery.

III. APPLICABLE STANDARDS OF REVIEW

"On appeal, the issue of standing is reviewed *de novo* under the right/wrong standard." Abaya v. Mantell, 112 Hawai'i 176, 180, 145 P.3d 719, 723 (2006).

> On appeal, the grant or denial of summary judgment is reviewed *de novo*. *See State ex rel. Anzai v. City and County of Honolulu*, 99 Hawai'i 508, [515], 57 P.3d 433, [440] (2002); *Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).
>
> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences

---

[3] Kaiawe does not appeal the dismissal of the Amended Third-Party Complaint against DPW.

12

> drawn therefrom in the light most favorable to the party opposing the motion.

> *Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

Nuuanu Valley Ass'n v. City & Cty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

With regard to the burdens of the moving and non-moving parties on summary judgment, the Hawai'i Supreme Court has articulated:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.

> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

Wong v. Cayetano, 111 Hawai'i 462, 476, 143 P.3d 1, 15 (2006) (quoting French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004)).

"A declaratory judgment is a form of equitable relief." Kau v. City & Cty. of Honolulu, 104 Hawai'i 468, 473, 92 P.3d 477, 482 (2004). "The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or

principles of law or practice to the substantial detriment of the appellant." Curtis v. Dorn, 123 Hawaiʻi 301, 306, 234 P.3d 683, 688 (App. 2010) (quoting Aickin v. Ocean View Invs. Co., Inc., 84 Hawaiʻi 447, 453, 935 P.2d 992, 998 (1997) (citation, internal quotation marks and brackets omitted)).

IV. DISCUSSION

A. Summary Judgment on Kaiawe's Counterclaim

Kaiawe contends that the Circuit Court erred when it granted summary judgment against him on his Counterclaim. In the Counterclaim, Kaiawe alleged that a real and actual controversy existed as to the ownership and use of the Property and that he sought a declaration of the parties' respective rights and obligations under HRS Chapter 632 as to the ownership and use of the subject property."[4] Additionally, Kaiawe requested that the Circuit Court determine the "respective rights and interest in the subject property" under HRS chapter 669.[5] Thus we consider whether the Circuit Court erred when it summarily ruled against Kaiawe with respect to a quiet title claim and/or a request for declaratory judgment.

1. Quiet Title

On appeal, Kaiawe appears to disavow any claim or right to title to the Property, stating that he "sought to impress a servitude on (not a forfeiture of) the cemetery parcel based on the Association and its successor's actual and long, undisturbed use of the parcel as a cemetery after the Association first

---

[4]     HRS Chapter 632 is titled "DECLARATORY JUDGMENTS."

[5]     HRS Chapter 669 is titled "QUIETING TITLE."

accepted Mikala Kaiawe's 1915 Deed." (Emphasis and footnote omitted). Kaiawe repeatedly emphasizes on appeal that his claim is that the Property was dedicated to a cemetery use, either at common law and/or by statute.

Nevertheless, in light of Kaiawe's request in the Counterclaim that the Circuit Court determine the "respective rights and interest in the subject property" under HRS Chapter 669, we note that HRS § 669-1(a) (2016) provides that a quiet title action "may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim." "In an action to quiet title, the burden is on the [quiet title] plaintiff to prove title in and to the land in dispute, and, absent such proof, it is unnecessary for the [quiet title] defendant to make any showing." Maui Land & Pineapple Co. v. Infiesto, 76 Hawai'i 402, 407, 879 P.2d 507, 512 (1994) (citing State v. Zimring, 58 Haw. 106, 110, 566 P.2d 725, 729 (1977)). The quiet title "plaintiff has the burden to prove either that he has paper title to the property or that he holds title by adverse possession." Id. at 408, 879 P.2d at 513 (citing Hustace v. Jones, 2 Haw. App. 234, 629 P.2d 1151 (1981)). Kaiawe has not raised an adverse possession claim, and has not pled or provided any evidence of superior title. Nor does the 1915 Deed contain any reservation of interest or right of reversion. Ibbetson submitted evidence of unbroken title from Mikala Kaiawe to the Association to HCF to him. Thus, we

conclude that the Circuit Court did not err when it entered summary judgment as to Kaiawe's action to quiet title.

2.   Declaratory Judgment

In his Counterclaim, Kaiawe sought, *inter alia*, a declaration of the parties' respective rights and obligations under HRS chapter 632[6] as to the use of the Property.  Kaiawe therein asserted that the 1915 Deed created a restriction that the Property be used for cemetery purposes only.  Kaiawe alleged that he has the right to "enter upon the subject property, to visit the burial site of his ancestor Mikala Kaiawe and to engage in appropriate activity on the land and to visit the burial sites of such other persons who are buried on the subject property." On appeal, Kaiawe argues that the Circuit Court erred on summary judgment when it concluded that (1) he lacks standing to enforce what he contends is a servitude on the Property, *i.e.*, to

---

[6]   HRS § 632-1 (2016) provides, in relevant part:

. . . .

   [(b)] Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

restrict the use of the entire Property to cemetery use only, and (2) the Property was not dedicated as a public cemetery.

a.     Standing to Enforce the 1983 Deed

The standing issue before us is somewhat nuanced.  In his summary judgment motion, Ibbetson did not argue that Kaiawe lacks standing with respect to the 1915 Deed, by which Kaiawe's lineal ancestor conveyed the Property to the Association, or that Kaiawe lacks standing as a person whose family member was buried on the Property.  Rather, Ibbetson argued, and the Circuit Court concluded, that Kaiawe does not have standing to enforce the more restrictive language, which first appeared in the 1983 Deed transferring the Property from the UCC to its administrative and investment foundation, HCF.  In addition, Ibbetson argued that there is no actual or threatened injury to Kaiawe, fairly traceable to Ibbetson, that would entitle Kaiawe to affirmative relief against Ibbetson.

In opposing summary judgment, Kaiawe did not argue that he had standing to enforce the 1983 Deed.  Instead, Kaiawe argued that as a relative of Mikala Kaiawe, who is buried on the Property, he has "a common law right to protect a 'dedicated' parcel and to ensure that the parcel so 'dedicated' is used only for cemetery uses and no other uses."  In addition, Kaiawe argued that, as a lineal descendent of Mikala Kaiawe, he can enforce the limitations of the 1915 Deed.  As to his actual or threatened injuries, Kaiawe argued that by putting non-cemetery uses on the Property, Ibbetson injured Kaiawe's protected interests that the

parcel be used for cemetery uses only according to the terms of the 1915 Deed and the Association's "dedication" of the Property.

On appeal, Kaiawe submits that the Circuit Court misinterpreted the significance of the 1983 Deed and asserts that 1983 Deed "reflected the Association's confirmation (admission) of its past dedication" of the Property to cemetery use; in other words, Kaiawe introduced the 1983 Deed as evidence of the prior dedication of the property.

Thus, Kaiawe does not assert, argue, or otherwise support a claim that he has standing to enforce the alleged restrictions of the 1983 Deed *per se*.  The Circuit Court's ruling on standing is limited to the conclusion that Kaiawe has no standing to enforce the 1983 Deed.  Accordingly, having no basis to do otherwise, we conclude that the Circuit Court did not err in concluding that Kaiawe has no standing to enforce the 1983 Deed.

b.    Dedication

Kaiawe challenges the Circuit Court's conclusion that the "property conveyed to Plaintiff Ibbetson by [the 2003 Deed] was never dedicated as a public cemetery."

Dedication is defined as the "appropriation of land, or an easement therein, by the owner, for the use of the public, and accepted for such use by or on behalf of the public."  Maui Ranch Estate Owners Ass'n v. Cty. of Maui, 6 Haw. App. 414, 420-21, 724 P.2d 118, 123 (1986) (citation omitted); see also Gold Coast Neighborhood Ass'n v. State, 2017 WL 3668851, *10-*12 (Hawai'i August 25, 2017) (recognizing common law implied dedication to

18

the State). "Dedication of land for public use may be achieved either by statute or by common law." Id. at 421, 724 P.2d at 123. "Common law dedication is accomplished either expressly, as by deed, or impliedly, as by acts and conduct which manifest an intent to give the property for public use." Id. (citation omitted).

(1) *common law dedication*

Kaiawe contends that the Property was dedicated to cemetery use under common law and/or HRS Chapter 441. In support of his common law argument, Kaiawe relies principally on Smith v. Wilder, 6 Haw. 228 (Haw. Rep. 1879).[7] This case involved Kawaiahao Church's dedication of a part of its churchyard for the erection of the Lunalilo Mausoleum. Id. at 228-29. The issue in the case was whether the government had the right of possession, care, and control of the mausoleum. Id. at 228. The supreme court noted that the "dedication thus formally made would estop the Kawaiahao Church from revoking the dedication and from making any other disposition of this ground, so long as it continued to be used as the site for the Lunalilo Mausoleum." Id. at 229. As Kaiawe points out, the court noted:

> A dedication may be made without writing; by act *in pais*, as well as by deed. It is not at all necessary that the owner should part with the title which he has, for dedication has respect to the possession, and not the permanent estate. Its effect is not to deprive a party of title to his land, but to estop him while the dedication continues in force from asserting that right of exclusive

_____

[7] Kaiawe also cites an unpublished circuit court decision from 1971, in violation of Hawai'i Rules of Appellate Procedure Rule 35(c). In any case, we note that the improperly cited case cites no authority for its conclusions of law and the remedy fashioned therein does not support Kaiawe's request for a declaration that the entire Property must be used for cemetery purposes only and no other use.

19

possession and enjoyment which the owner of property ordinarily has.

Id. (citation and quotation marks omitted; format altered).

The supreme court further explained, however, the nature of this estoppel:

> The dedication of this land for the erection of a Royal Mausoleum may be considered as a dedication if not to a *quasi* public use, certainly to a purpose, the character of which, as a resting place for the dead, entitles that it should be sacredly preserved and hallowed.
>
> According to common law in cases of ordinary interments in the ground, the heir has no property in the bodies or ashes of his ancestors, and he cannot sustain an action against such as disturb the remains, but as the body after burial becomes a part of the ground where it was committed, 'earth to earth, ashes to ashes, dust to dust,' the person who has the freehold of the soil can bring an action of trespass *quare clausum fregit*, against those who disturb or disinter it; and any person who has the actual possession of the land may sustain this action against a wrong doer.
>
> But where the owner of the freehold of the cemetery has, by a deed, conferred a right to the exclusive occupation of a particular lot in a cemetery, such grantee may maintain an action for trespass on the particular lot.
>
> Blackstone says further, that 'other personal chattels there are, which also descend to the heir in the nature of heirlooms, as a monument or tombstone in a church, or the coat-armor of his ancestor there hung up, with the pennons and other ensigns of honor suited to his degree. In this case, albeit the freehold of the church is in the parson, and these are annexed to that freehold, yet cannot the parson or any other take them away or deface them, but is liable to an action from the heir.'

Id. at 229-30 (citations omitted).

Thus, Smith recognizes that, at common law, the fee simple owner of a property that includes dedicated burial grounds does not have the same right of exclusive possession and enjoyment as an owner whose property is not so burdened, as generally the actual resting places of the dead should be "preserved and hallowed." However, Smith does not recognize a right of an heir to the remains of his ancestors or to the burial site. Nor does it support the proposition that the dedicated use

of a part of a property as a burial site precludes a fee simple owner from other uses of the remainder of the property. Even if this court were to conclude that the Circuit Court erred in concluding that the Property was never dedicated as a public cemetery, Smith does not support the relief requested by Kaiawe. Here, Ibbetson took the Property from HCF subject to a perpetual non-exclusive easement, which was specifically excepted and reserved, for the visitation, maintenance, and care of the two grave sites located upon the Property, as described in the 2003 Deed. There is no allegation or evidence that Ibbetson has failed to comply with the conditions set forth in the 2003 Deed, which are consistent with the common law principles recognized in Smith.

As to the issue of common law dedication, Smith simply does not support the proposition that the dedicated use of part of a parcel as a cemetery or burial grounds evidences an implied dedication of the entirety of the property for use only as a cemetery. In Smith, the Lunalilo Mausoleum was formally dedicated as a royal burial ground. Only that particular plot of land, within the greater Kawaiahao Church property, was at issue.

Kaiawe also cites, *inter alia*, Barker v. Hazel-Fain Oil Co., 219 S.W. 874 (Tex. App. 1920), to support the contention that "courts look to the facts regarding the use that the grantee makes of the land in context of the deed's language." In Barker, the subject deed specifically conveyed a property for use as a *public* cemetery and was thereafter used for the burial of the public generally, as well as members of the grantee church. Id.

21

at 875-76. The Texas appellate court did not conclude that the form of the grantor's deed precluded a subsequent sale, or even that it mandated the perpetual or exclusive use as a cemetery. Rather, the court found that, so long as the property was fit for and used as a public cemetery, it must be maintained for the benefit of the public and "that any person, as plaintiffs, having loved ones buried therein would have the right to complain and to invoke the aid of a court of equity to restrain destruction, or spoliation, or disturbance of the graves." Id. at 876. In addition to the dedication and use as a public cemetery, the court's reinstatement of a temporary injunction on a purported sale to oil company was based on particular facts not presented here. First, the would-be buyer had entered into the cemetery and was "threatening to erect derricks, dig slush pits, etc., for the drilling of an oil well which, it was averred, would inevitably result, if allowed to proceed, in discordant noises, obnoxious odors, and desecration of graves by spraying oil, etc." Id. at 875. In addition, the court essentially concluded that there was no cash consideration being given for the land as the stated consideration was a fractional (1/8) interest in the oil company whose only asset would be whole of the land being sold; thus, the deed to the oil company was "wholly unauthorized and invalid." Id. at 878.

We reject Kaiawe's assertion that Barker warrants the relief requested in this case. The language of the 1915 Deed, "so that it may be used as a cemetery" expresses the grantor's preferred use of the property, but does not limit or preclude

22

other uses. See Midkiff v. Castle & Cooke, Inc., 45 Haw. 409, 416, 368 P.2d 887, 891-92 (1962) (discussed below). Nor does the 1915 Deed purport to dedicate the land as a public cemetery. Upon review of the declarations and exhibits submitted in opposition to summary judgment, while two portions of the Property were clearly utilized for burials, there is no evidence that it was open for burials of the public at large, or that Ibbetson's home, which is already built, in any way desecrates the graves or interferes with the rights of the families of the dead to access the grave sites, subject to reasonable restrictions.

Kaiawe also contends that the habendum clause in the 1983 Deed supports his claim of common law dedication of the entire Property as a cemetery. Hawaiʻi law establishes, however, that a deed is construed according to the intent of the parties, and "such intent must be ascertained from the language of the instrument itself." Midkiff, 45 Haw. at 415, 368 P.2d at 891. Midkiff also holds that where a deed clearly expresses the intent of the grantor to convey a fee simple estate, and is sufficient to accomplish that purpose, then a habendum clause will not limit that grant, unless the habendum clause spells out an intention to convey a fee simple determinable or other limited estate. Id. at 415-16, 368 P.2d at 891.

> The principal reason given for this general rule is that the purpose clause is a mere expression or declaration or recital of the anticipated use by the grantee of the land and that such an expression or declaration or recital does not indicate an intent to qualify or limit the estate granted by the deed. In many of the decisions an additional reason for the rule is given that a grantor desiring to grant an easement or to convey a determinable fee or other

> limited estate can readily use appropriate language for that
> purpose.

Id. at 416, 368 P.2d at 891-92 (citations omitted).

Here, the language and form of the 1983 Deed are sufficient to convey a fee simple estate, and Kaiawe does not argue otherwise. Nothing in the 1983 Deed indicates that a reversion to the grantor was intended or that less than a fee simple estate was being transferred. Nor does Kaiawe provide authority for the proposition that a deed's expression of anticipated use should be otherwise viewed as creating a common law servitude on the deeded property that is inconsistent with the estate that was conveyed by the deed. Thus, we reject Kaiawe's contention that the 1983 Deed evidences the dedication of the Property in its entirety, for exclusive use as a cemetery. See also, e.g., Dumbarton Imp. Ass'n, Inc. v Druid Ridge Cemetery Co., 195 Md. App. 53, 71, 5 A.3d 1133, 1143 (2010) & Hill v. Towson Realty, Inc., 221 Md. 389, 395, 397-98, 157 A.2d 796 (App. 1960) (cemetery clause and use does not limit other use of the remainder of the property).

Finally, we cannot conclude that the Planning Commission testimony of Nancietta Haalilio (**Haalilio**) creates a genuine issue of material fact as to the public dedication of the entirety of the Property. Haalilio's statements confirm the burials at Site A and Site B, which are undisputed, but does otherwise support Kaiawe's claim of public dedication.

We conclude that the Circuit Court did not err in granting summary judgment against Kaiawe on his common law claim that the Property was dedicated for use as a public cemetery.

(2) *statutory dedication*

Kaiawe also contends that the Property was dedicated by statute. "Statutory dedication occurs when the statutory provisions are complied with." Maui Ranch, 6 Haw. App. at 421, 724 P.2d at 123. The relevant statutory provision, for cemeteries in existence prior to 1967, is HRS § 441-17 (2013), which provides:

> **§ 441-17 Existing cemeteries deemed dedicated; extension of existing cemeteries.** All existing cemeteries or parts thereof which shall have been lawfully established, and for which a map or plat substantially similar to that required by section 441-3 has been filed or recorded in the bureau of conveyances or in the office of the assistant registrar of the land court, shall be deemed to have been dedicated as of [July 1, 1967], to the same extent and with like effect as provided in this chapter.

HRS § 441-3 (2013) provides in relevant part:

> **§ 441-3 Map or plat required; unique identifier.** (a) The cemetery authority, as any of the dedicated cemetery property, or any part or section thereof, is offered for sale, transfer, or disposition in the form of plots, crypts, or niches, shall also:
>
> (1) In the case of land, survey and subdivide the dedicated cemetery property into sections, blocks, plots, avenues, walks, or other subdivisions; make a good and substantial map or plat showing the sections, blocks, plots, avenues, walks, or other subdivisions, with descriptive names, initials, or numbers that uniquely identify each plot;
>
> (2) In the case of a mausoleum or columbarium, make a good and substantial map or plat on which shall be delineated the sections, halls, rooms, corridors, elevation, and other divisions, with descriptive names, initials, or numbers that uniquely identify each niche, mausoleum, or crypt; and
>
> (3) File the maps or plats required by this section in the office of the bureau of conveyances or the office of the assistant registrar of the land court, and maintain a copy of all filed maps as a permanent record of the cemetery authority.

Thus, under HRS § 441-17, a cemetery that existed prior to 1967 will be deemed dedicated if a map or plat, in compliance

25

with the requirements of HRS § 441-3, was filed or recorded in the bureau of conveyances or in the office of the assistant registrar of the land court.

Kaiawe contends, without citing any authority, that the metes and bounds description in the 1915 Deed is "'substantially similar to' the survey map referred to in Sections 441-3 and 17, HRS." The 1915 Deed describes the Property as follows:

> Commencing at the Northeast corner of this piece on the old government trail, a little makai of the present government road, adjoining Kaohe 4, and running thence along the line between Kaohe 4 and Kaohe 5, 200 feet in a westwardly direction to a stake and stone pile; thence southwardly to a stake and stone pile 102 feet; thence eastwardly to a stake and stone pile 275 feet; and thence northwardly . . . to point of commencement, and containing about three-fourths of an acre, more or less, and being described in R.P. Number 2368 to Huakonou.

Kaiawe's argument is without merit. The plat or map requirements of HRS §§ 441-17 & 441-3 are clearly tailored to make an official record tailored to characteristics of a cemetery property. The metes and bounds description in the 1915 Deed merely outlines the boundaries of the Property. It does not contain any names, initials, or numbers that uniquely identify the sections, blocks, plots, avenues, walks, or other subdivisions in the Property as parts of a cemetery, or any "substantially similar" information of a cemetery nature. Thus, we conclude that the Property was not deemed dedicated as a cemetery pursuant to HRS § 441-17.

As we have concluded that the Circuit Court did not err in its ruling concerning Kaiawe's standing to enforce the 1983 Deed or in its determination that there is no genuine issue of material fact as to the common law or statutory dedication of the

Property, we conclude that the Circuit Court did not err in entering the Summary Judgment Order.

    B.    Kaiawe's Other Points of Error

        Kaiawe's other points of error are also based on his assertion of erroneous findings and conclusions in the Summary Judgment Order.  As we have rejected those arguments, we conclude that the second, third, and fourth points of error are without merit.

V.    CONCLUSION

        For the reasons stated above, the Circuit Court's November 13, 2014 Amended Judgment is affirmed.

        DATED: Honolulu, Hawai'i, October 31, 2017.

On the briefs:

Michael J. Matsukawa,
for Defendant/Counterclaimant/
 Third-Party Plaintiff/
 Appellant.

Dennis A. Krueger,
(Jewell & Krueger),
    and
Wayne Nasser,
James K. Mee,
(Ashford & Wriston),
for Plaintiff/Counter-Defendant/
 Appellee.

Derek R. Kobayashi,
Matthew A. Hemme,
(Schlack Ito),
for Third-Party Defendants/
 Appellees.

Presiding Judge

Associate Judge

CONCURRING AND DISSENTING OPINION BY GINOZA, J.

I concur with the majority opinion in that Defendant-Appellant/Counterclaimant/Third-Party Plaintiff Dean Kaiawe (**Kaiawe**) does not apparently seek, and does not have the right, to reversion of title for the subject property (**Property**) given the 1915 deed by his great grandmother, Mikala Kaiawe (**Mikala**), which conveyed the Property to the Board of the Hawaiian Evangelical Association (**Evangelical Association**). Midkiff v. Castle & Cooke, Inc., 45 Haw. 409, 415-419, 368 P.2d 887, 891-93 (1962). However, in my view, there are genuine issues of material fact related to whether there was a common law dedication of the Property. Specifically, I believe there is an open question of fact as to whether the Property was dedicated for use as a public cemetery. Therefore, I respectfully dissent in that regard.

Dedication is defined as the "appropriation of land, or an easement therein, by the owner, for the use of the public, and accepted for such use by or on behalf of the public." Maui Ranch Estate Owners Ass'n v. Cty. of Maui, 6 Haw. App. 414, 420-21, 724 P.2d 118, 123 (1986) (citation omitted). "Dedication of land for public use may be achieved either by statute or by common law." Id. at 421, 724 P.2d at 123.

With regard to common law dedication, the Hawai'i Supreme Court has expressed the following:

> "A common law dedication may be accomplished without any statement, written or spoken, for one who invites or merely permits the public to use his or her land for a long period may be held to have made an offer of implied dedication." R.A. Cunningham, *The Law of Property* 751 (1984). The rationale behind this theory is that the owner is "estopped to deny permanent public access" where he has "admitted the public to use the land over a long time." Id.; *see also* 26 C.J.S. *Dedication* § 2 (1956). There must be an offer and acceptance of dedication. *See* 26 C.J.S. *Dedication* § 34 (1956). When there is no express offer, the offer may be implied under the circumstances and the acceptance may also be implied by the nature of the public use. *See* Annotation, *Implied Acceptance, by Public Use, of Dedication of Beach or Shoreline Adjoining Public Waters*, 24 A.L.R.4th 294 (1983); *see also* 26 C.J.S. *Dedication* § 37 (1956). In other words, the duration and type of public use can raise both the presumption of the owner's intent (or offer) to dedicate land to public use, as well as constitute acceptance by the public. 23 Am.Jur.2d *Dedication* §§ 36, 55 (1983).

In re Banning, 73 Haw. 297, 304-05, 832 P.2d 724, 728-29 (1992). See also Gold Coast Neighborhood Ass'n v. State, --- Hawai'i ---, --- P.3d ---, No. SCWC-14-0000472, slip op. at *10 (Haw. Aug. 25, 2017) ("The common law has historically provided for the dedication of private property for public use."); Smith v. Wilder, 6 Haw. 228, 229 (1879)("A dedication may be made without writing; by act in pais, as well as by deed."); Maui Ranch Estate Owners Ass'n, 6 Haw. App. at 421, 724 P.2d at 123 ("Common law dedication is accomplished either expressly, as by deed, or impliedly, as by acts and conduct which manifest an intent to give the property for public use.").

It is also generally recognized that there can be common law dedication of property for use as a public cemetery.

> Land may be dedicated to the public for cemetery purposes. . . . In the absence of a statute, no particular form or ceremony is required to accomplish such a dedication. The intention of the owner of the land to dedicate it for a public cemetery, together with the acceptance and use of the same by the public, or the consent and acquiescence of the owner in the long-continued use of his lands for such purpose, are sufficient.

14 Am. Jur. 2d Cemeteries § 19 (2000).

Here, Kaiawe submitted and relied on Mikala's 1915 deed (**1915 Deed**) in support of his opposition to Plaintiff-Appellee/Counterclaim Defendant Daniel Ibbetson's (**Ibbetson**) summary judgment motion. In the 1915 Deed, Mikala conveyed "all of that certain piece or parcel of ground situate in said Kaohe 5, lying on the makai side of the government road adjoining Kaohe 4" to the Evangelical Association. The 1915 Deed describes the Property and states, in relevant part, "[t]o have and to hold the same premises, with the appurtenances, so that it may be used as a cemetery, to the said Board of the Hawaiian Evangelical Association, its successors and assigns, forever." (Emphasis added.) Further, Kaiawe points to a deed executed by the Hawaii

Conference of the United Church of Christ (**UCC**)[1] in 1983 (**1983 Deed**), as further evidence of a common law dedication of the Property for cemetery use, *i.e.* that the Evangelical Association and its successors had accepted and effectuated a dedication. In the 1983 Deed, the UCC conveyed the Property to the Hawai'i Conference Foundation (**HCF**), and the deed states, in relevant part, "TO HAVE AND TO HOLD the same, together with the improvements thereon and all rights, easements, privileges and appurtenances thereunto belonging or appertaining, unto the Grantee, its successors and assigns, <u>for cemetery purposes only, forever</u>." (Emphasis added.)[2] The 1915 Deed and the 1983 Deed do not contain express language that the Property be used for a "public" cemetery. However, neither deed restricts the cemetery to the exclusive use of church members.

Even though the 1915 and 1983 deeds do not state that the Property is to be used as a public cemetery, Mikala's intent can be implied from the public's use of the cemetery. As the

---

[1] The Evangelical Association apparently changed its name several times and in 1983, the name of the successor entity was the Hawaii Conference of the United Church of Christ.

[2] Regardless of whether Kaiawe has standing to "enforce" the 1983 Deed, he has standing to assert a common law dedication of the property. "The critical inquiry in determining standing is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his [or her] invocation of ... [the court's] jurisdiction and to justify exercise of the court's remedial powers on his [or her] behalf." <u>McDermott v. Ige</u>, 135 Hawai'i 275, 284, 349 P.3d 382, 391 (2015)(internal quotation marks and citations omitted). Generally, "a plaintiff must allege that: (1) he or she has suffered an actual or threatened injury as a result of the defendant's wrongful conduct; (2) the injury is fairly traceable to the defendant's actions; and (3) a favorable decision would likely provide relief for the plaintiff's injury." <u>Id.</u> With regard to his claim for a common law dedication, Kaiawe is seeking to establish that the Property is a public cemetery. Kaiawe meets the three-part test for standing because his great grandmother Mikala's 1915 Deed is the basis for his assertion of a common law dedication and she is buried on the Property. Ibbetson's Complaint For Injunctive Relief and Damages (**Complaint**) alleges that Kaiawe and others came onto the Property on January 22, 2006, removed plant material from one of the grave sites, refused Ibbetson's demands that they leave, and that Ibbetson called the police. Ibbetson's Complaint seeks to enjoin Kaiawe from coming to the Property, except in accordance with terms in a Limited Warranty Deed that conveyed the Property from HCF to Ibbetson. Kaiawe's Counterclaim alleges that, as a lineal descendant of Mikala, he asserts a right to enter the Property to engage in appropriate activity on the land and to visit the burial sites.

Hawai'i Supreme Court noted in In re Banning, "[w]hen there is no express offer, the offer may be implied under the circumstances and the acceptance may also be implied by the nature of the public use. In other words, the duration and type of public use can raise both the presumption of the owner's intent (or offer) to dedicate land to public use, as well as constitute acceptance by the public." 73 Haw. at 305, 832 P.2d at 729 (emphasis added)(citations omitted). Thus, evidence of the cemetery's use by the public is relevant to determine if there was a common law dedication to the public.

Kaiawe submitted evidence that, considered in the light most favorable to Kaiawe as the non-movant, raises a genuine issue of material fact as to whether the cemetery was utilized by the public. In opposing the summary judgment motion, Kaiawe submitted his declaration to which he attached, *inter alia*, a transcript from a hearing before the County of Hawai'i Planning Commission,[3] which was addressing Ibbetson's application for a special permit to allow a bed and breakfast on the Property. The transcript includes the testimony of Nancietta Haalilio (**Haalilio**) before the Planning Commission, in which she states that she serves as the Pastor for Pukaana Congregational Church (**Pukaana Church**), a "sister church" across the street from the Property. She stated that the Pukaana Church "became somewhat of the steward to that cemetery" and "all through the years, the 50's, the 60's, 70's, 80's we were still cleaning as often as we could." As to who is buried in the cemetery, Haalilio stated that in addition to her own family members, "[t]here's quite a few." Further, when asked if she had been in touch with descendants of other people buried in the cemetery, Haalilio

---

[3] The parties do not address whether this hearing transcript is admissible. However, even if Ibbetson challenged the admissibility of the transcript, his argument would be deemed waived because he did not challenge it in the circuit court. Price v. AIG Hawai'i Ins. Co., 107 Hawai'i 106, 111-12, 111 P.3d 1, 6-7 (2005) (holding that an appellant's failure to challenge the admissibility of documents related to a summary judgment motion in the trial court waived the issue on appeal).

responded:

> Okay, I need to have you understand that there was never such thing as a master list back then. When people died they were buried in the back yard or the front yard or wherever. And it just so happened that this church that's across of the highway did have this piece of property graciously given over to the church for burial purposes. There was no master list as to who was really buried there. It's just by knowledge passed down from generation to generation that so and so is over here and so and so is over there. And that's how it is with my in-laws, my immediate family. But there's also family members that have been taking care of their portions, their family portions, that's not here in Kona. Some are from Kau and Dean Kaiawe's ohana were all scattered all over but as often as we are able we try to maintain those particular plots. But it's not necessary that because my family is buried in A that I would know who's buried in B. Many of those plots were not marked or identified by name.

Haalilio's testimony before the Planning Commission indicates that individuals beyond members of the church situated on or next to the Property were buried in the cemetery. Given this record, there appears to be a genuine issue of material fact as to whether the cemetery was used by the public.

"[A] summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry his or her burden of proof at trial." Ralston v. Yim, 129 Hawai'i 46, 60, 292 P.3d 1276, 1290 (2013) (citation omitted). "Where the movant attempts to meet his or her burden through the latter means, he or she must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial." Id. at 60-61, 292 P.3d at 1290-91 (citation omitted and emphasis in original).

In his reply memorandum supporting his summary judgment motion, Ibbetson argued that the "Hoikeana Cemetery[4] was for members of the Hoikeana Church and their families, not the general public." However, Ibbetson did not cite to any evidence

---

[4] It appears from the record that Hoikeana Church was the name of the church on or next to the subject Property.

that the cemetery was intended and used only for members of the Hoikeana Church.[5] Rather, it appears there is no such evidence in the record and, instead, Haalilio's testimony before the Planning Commission suggests otherwise. As the summary judgment movant, Ibbetson failed to provide "evidence negating an element of the non-movant's claim," such as evidence that the cemetery was not used by the public and instead was used exclusively by members of Hoikeana Church, the Evangelical Association, or UCC. Ibbetson also has not demonstrated that Kaiawe will be unable to carry his burden of proof at trial to establish a common law dedication of the Property as a public cemetery.

Viewing the evidence in the record in a light most favorable to Kaiawe as the non-movant, as is required under the summary judgment standard, there is a genuine issue of material fact whether the cemetery was intended and utilized as a public cemetery.

For these reasons, I would vacate summary judgment on Kaiawe's claim of a common law dedication of the Property, and would remand the case to the circuit court for further proceedings on this issue.

*(signature)*

---

[5] HCF's answering brief on appeal also asserts, without citation to evidence in the record, that "[t]he gravesites were reserved specifically for the congregation of the now-defunct Hoikeana Church."